IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LUIS MAURICIO MARTINEZ,** | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| | : | |
| **v.** | : | **No. 26-cv-00718** |
| | : | |
| **JL JAMISON, in his official capacity as** | : | |
| **Warden of the Federal Detention Center,** | : | |
| **Philadelphia, PA, et al.,** | : | |
| *Respondents.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                       **MARCH 12, 2026**

On February 4, 2026, Petitioner Luis Mauricio Martinez filed a Petition for a Writ of
Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), seeking immediate release and a
declaration that his detention violates the Due Process Clause of the Fifth Amendment, the
Administrative Procedure Act ("APA"), and the Immigration and Nationality Act ("INA") and its
implementing regulations.  *See* ECF No. 1.  Petitioner is one of many noncitizens residing in the
United States under orders of supervision who—despite years of compliance with the terms of
supervision and no involvement in criminal activity—have recently had their release revoked by
Immigration and Customs Enforcement ("ICE").  Respondents oppose Petitioner's release and
contend that he has been lawfully detained pursuant to 8 U.S.C. § 1231.  *See* ECF No. 7.  For the
reasons set forth below, the Court will **GRANT** the Petition (ECF No. 1), and order Respondents
to immediately release Petitioner from detention.

I.    **BACKGROUND**

   A.  **Factual Background**

Petitioner Luis Mauricio Martinez is a 52-year-old noncitizen from Honduras who has been
living in the United States incident-free for about twenty-one years.  ECF No. 1 ¶¶ 7, 13.  On or

about February 15, 2005, Petitioner attempted to cross the United States border, where he was apprehended. *Id.* ¶ 14; *see also* ECF No. 7-1 at 4. Petitioner was issued a Notice to Appear, which indicated that he would receive a hearing date, and was released into the United States in 2005. *See* ECF No. 1 ¶ 15; *see also* ECF No. 7-1 at 4. Petitioner did not appear on the date of his hearing because he allegedly "did not receive notice" of the hearing. ECF No. 1 ¶ 16. He was thus ordered removed *in absentia* on April 11, 2005. *Id.*; *see also* ECF No. 7-1 at 4.[1]

As relevant to the instant Petition, Petitioner was placed on an Order of Supervision ("OSUP") on July 22, 2010. *See* ECF No. 1 at 19; *see also* ECF No. 7-1 at 4; ECF No. 7-4 at 2.[2] Prior to his detention, he was residing in Fairless Hills, Pennsylvania, where he and his family have been located for about ten years. ECF No. 1 ¶ 7. Since the time that ICE released him on a continuing OSUP, he has "complied with all conditions of the [O]rder" and has not missed a scheduled check in with ICE over the about fifteen years that he has been reporting. *Id.* ¶¶ 2, 20. Most recently, Petitioner attended his scheduled ICE check-in on January 13, 2026. *Id.* An ICE officer reviewed his case, released him from custody, and scheduled another appointment for October 2026. *Id.* Despite the fact that no circumstances had changed since his January 13, 2026 check in, on February 4, 2026, Respondents arrested Petitioner near his home, revoked his OSUP, and detained him. *Id.* ¶¶ 1, 3, 21. Respondents also served Petitioner with a Notice of Revocation of Release. *See* ECF No. 7-4 at 2–3. According to Petitioner, when he was arrested, Respondents

---

[1] Subsequently, Petitioner has unsuccessfully attempted to have his *in absentia* order reopened. *See* ECF No. 1 ¶ 17; *see also* ECF No. 7-2; ECF No. 7-3.

[2] Petitioner is also engaged in active immigration proceedings. He is the "beneficiary of an approved immediate relative petition," an I-130 Petition, which was filed by his mother who is a United States citizen. ECF No. 1 ¶ 18. Petitioner "will be eligible to obtain an immigrant visa based upon that approved petition" in about one year. *Id.*; *see also id.* at 24 (Ex. C). In addition, in January 2024, Petitioner filed an application for asylum and withholding of removal, which is pending. *Id.* ¶ 19; *id.* at 26–27 (Ex. D).

"notified him that he had been on a list and they had specifically targeted him."  ECF No. 1 ¶ 3;
*see also* ECF No. 7-1 at 3 (describing ICE's "at-large operations, targeting immigration
violators").  Respondents detained Petitioner and "processed [him] as an OSUP Revocation,"
despite the fact that Petitioner has "no criminal history," "denies any membership to any gang or
criminal organization," and "claims fear of removal to Honduras."  *Id.* at 4.

### B.  Procedural History

On February 4, 2026, through counsel, Petitioner filed a Petition for a Writ of Habeas
Corpus pursuant to 28 U.S.C. § 2241, in which he argues that he is being unlawfully detained by
Respondents and is "neither a flight risk nor a danger to the community."  *See* ECF No. 1 ¶ 1.
According to Petitioner, Respondents revoked his OSUP in violation of agency regulations and
detained him without proper notice or an opportunity to be heard.  *Id.* ¶¶ 1, 5.  Petitioner raises
multiple claims for relief in his Petition, including for violations of (1) the Fifth Amendment of
the United States Constitution; (2) the APA; and (3) for *ultra vires* action.  *Id.* ¶¶ 41–81.

On February 18, 2026, Respondents filed a Response in Opposition to the Petition for Writ
of Habeas Corpus.  *See* ECF No. 7.  Respondents contend that Petitioner is being lawfully detained
under 8 U.S.C. § 1231 and that ICE intends to effectuate Petitioner's final order of removal "in the
reasonably foreseeable future."  *Id.* at 5 (emphasis omitted).  In addition, Respondents assert that
the revocation of Petitioner's OSUP complied with all regulations and that immigration regulations
do not require ICE to provide an alien with "an interview or opportunity to respond to the agency's
[discretionary] revocation" of an OSUP.  *Id.* at 13.

On February 24, 2026, Petitioner filed a Reply to the Government's Answer in Opposition
to his Petition for a Writ of Habeas Corpus.  *See* ECF No. 8.  The Petition is fully briefed and
before this Court.

## II.    LEGAL STANDARD

A federal district court can grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "Habeas is at its core a remedy for unlawful executive detention," *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and is "regularly invoked on behalf of noncitizens, particularly in the immigration context."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001), *superseded by statute on other grounds*.  It is Petitioner's burden to demonstrate that he is being detained in violation of the Constitution or federal law.  *See Walker v. Johnston*, 312 U.S. 275, 286 (1941).  In addition, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in immigration and deportation proceedings.  *See Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law—that is, a meaningful opportunity to be heard—before being deported.").

## III.    DISCUSSION

The parties do not dispute that Petitioner is being detained pursuant to 8 U.S.C. § 1231.  Instead, the dispute centers around whether Petitioner's detention is unlawful under the Due Process Clause of the Fifth Amendment, the APA, and the INA and its implementing regulations.  For the reasons described below, the Court finds that Petitioner is being detained in violation of the Due Process Clause.[3]   Accordingly, as a remedy for this violation, Respondents must immediately release Petitioner from detention.

---

[3] Because the Court finds that Respondents violated Petitioner's procedural due process rights under the Fifth Amendment, the Court does not address the other claims for relief that were raised in the Petition, such as purported violations of the APA.

**A. Relevant Statutory Framework Under 8 U.S.C. § 1231**

Section 1231 of the INA governs the procedures for detaining an alien who is subject to a final order of removal. *See* 8 U.S.C. § 1231(a). The statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," which is "referred to as the 'removal period.'" *Id.* § 1231(a)(1)(A). An alien's "removal period begins on the latest of" three dates as set forth in Section 1231: "(i) The date the order of removal becomes administratively final," *id.* § 1231(a)(1)(B)(i); "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," *id.* § 1231(a)(1)(B)(ii); or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement," *id.* § 1231(a)(1)(B)(iii). During the 90-day removal period, the statute provides for mandatory detention of the alien. *Id.* § 1231(a)(2)(A).

Once the 90-day removal period has expired, Section 1231(a)(6) allows the Government to detain three classes of individuals beyond that period: aliens "who are (1) inadmissible[;] (2) removable as the result of violations of certain status requirements or entry conditions, violations of criminal laws, or reasons of security or foreign policy[;] or (3) determined by the Attorney General to be a risk to the community, or to be unlikely to comply with the order of removal." *Lim v. Arteta*, No. 26-cv-461, 2026 WL 192490, at *1 (S.D.N.Y. Jan. 26, 2026) (citing 8 U.S.C. § 1231(a)(6)).

If the Government does not remove the alien within the 90-day removal period or detain the alien pursuant to Section 1231(a)(6), "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General," which must include certain provisions, such as "requiring the alien . . . to appear before an immigration officer periodically

5

for identification." *Id.* § 1231(a)(3)(A).  Those implementing regulations are codified at 8 C.F.R. § 241.5(a).  *See Dudamel v. Jamison*, No. 26-cv-361, 2026 WL 498612, at *4 (E.D. Pa. Feb. 23, 2026).

When noncitizens who have been ordered removed are released from detention at ICE's discretion, they generally become subject to an OSUP, which provides for their terms and conditions of supervision.  *See id.; see also Funes v. Francis*, No. 25-cv-7429, --- F. Supp. 3d ----, 2025 WL 3263896, at *13 (S.D.N.Y. Nov. 24, 2025); *Lim*, 2026 WL 192490, at *1.  The relevant regulations provide that an OSUP can be revoked under two circumstances: (1) if the alien "violates the conditions of release," the alien "may be returned to custody," 8 C.F.R. § 241.4(*l*)(1); and (2) upon a determination by certain enumerated individuals within ICE, an alien's release can be revoked, *see id.* § 241.4(*l*)(2).  "The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release."  *Id.*  In addition, "[a] district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."  *Id.*  The regulatory provisions further specify that "[r]elease may be revoked in the exercise of discretion when, in the opinion of the revoking official," one of the following reasons is demonstrated:

> (i)    The purposes of release have been served;
>
> (ii)   The alien violates any condition of release;
>
> (iii)  It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv)  The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.* § 241.4(*l*)(2)(i)–(iv).

When ICE revokes an alien's OSUP pursuant to 8 C.F.R. § 241.4(*l*)(1), "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole." *Id.* § 241.4(*l*)(1). In addition, "[t]he alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* Multiple courts have held that when an order of supervision is revoked pursuant to a discretionary determination by ICE—i.e., pursuant to 8 C.F.R. § 241.4(*l*)(2)—the procedural protections afforded by 8 C.F.R. § 241.4(*l*)(1) also apply. *See, e.g.*, *Dudamel*, 2026 WL 498612, at *4 n.6; *Funes*, 2025 WL 3263896, at *14–17; *Lim*, 2026 WL 192490, at *2; *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163–64 (W.D.N.Y. 2025). The Court finds the reasoning in these cases persuasive and thus similarly holds that, when ICE revokes a noncitizen's OSUP pursuant to its discretionary authority under Section 241.4(*l*)(2), "redetention under Section 241.1 requires notice and an informal interview." *Zhu v. Genalo*, 798 F. Supp. 3d 400, 412 (S.D.N.Y. 2025).

### B. Petitioner's Detention Violates His Fifth Amendment Due Process Rights

Once again, this Court is not working from a blank slate, as Petitioner is one of many noncitizens across the country who—despite years of compliance with the terms of supervision—have recently had their OSUPs revoked by ICE, and who have sought relief in federal court. The Court agrees with Petitioner that Respondents revoked his OSUP and detained him without complying with their own regulations. Accordingly, Petitioner's procedural due process rights under the Fifth Amendment were violated.

#### 1. Compliance with the Requirements of 8 C.F.R. § 241.4(l)

The parties disagree as to ICE's and Respondents' compliance with the notice and informal interview requirements of 8 C.F.R. § 241.4(*l*).

The Court starts with notice.  As required by the regulations, "[u]pon revocation," Petitioner was entitled to "notifi[cation] of the reasons for revocation of his . . . release."  8 C.F.R. § 241.4(*l*)(1).  On February 4, 2026, Respondents provided Petitioner with a "Notice of Revocation of Release," which states that his release was revoked under Section 241.4(*l*) because (1) ICE determined "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal[;]" (2) "ICE is seeking a travel document to effect your expeditious removal to Honduras[;]" and (3) "On April 11, 2005, you were ordered removed to Honduras."[4]  ECF No. 7-4 at 2 (emphasis omitted).

At a minimum, aspects of the Notice of Revocation of Release that was provided to Petitioner give the Court pause as to whether there was proper notice consistent with the Due Process Clause.  Indeed, the whole "process" employed here seemed haphazard, frenzied, with a make-it-up-as-we-go feel to it, leaving others to backfill whatever was missed after the action had already been taken.

For instance, there is no indication as to how long Petitioner was detained by Respondents before he was provided with the Notice of Revocation of Release.  On February 4, 2026, ICE arrested and detained Petitioner near his home in Fairless Hills, Pennsylvania.  *See* ECF No. 1 ¶¶ 3, 7; *see also* ECF No. 7-1 at 3.  But the signed proof of service indicates that an ICE deportation

---

[4] Those noncitizens, like Petitioner, who have been in the United States since 2005 and have been dutifully reporting as ordered since then have waited in limbo for Congress to act on their status. It is no secret that Congress has not made a policy decision as to what to do with this group of individuals.  Although these noncitizens wait with an "intent to remove" designation, Congress continues with a wait-and-see approach towards them and has not yet acted.  During these twenty years of limbo, Petitioner has been allowed to raise a family, maintain a job, and establish roots in the United States.  In this case, an agency has peremptorily acted and, in doing so, has pulled an end-run around Congress by determining it would act, since Congress has not.  Those arriving to the United States in 2005 who have obeyed the law and have dutifully reported to U.S. immigration authorities are in a different category than those arriving, say, in 2022, and the Court does not here comment on the latter category of cases that are coming in droves before it.

officer did not serve Petitioner with the Notice of Revocation of Release until he was "at ERO Philadelphia."  ECF No. 7-4 at 3.  Therefore, on the face of the document, Respondents did not provide Petitioner with the Notice of Revocation of Release—i.e., the reasons that they were revoking his OSUP and detaining him—at the time of his arrest and detention.  Indeed, Petitioner was purportedly only told that he was "on a list and [ICE officers] had specifically targeted him."  ECF No. 1 ¶ 3.[5]  Moreover, the deportation officer failed to indicate the exact time that he served Petitioner with the Notice of Revocation of Release, choosing instead to leave that line blank.  *See* ECF No. 7-4 at 3.  Therefore, it is possible that Petitioner was detained by Respondents for several hours without any indication as to why he was being detained before the Notice of Revocation of Release was served on him.  Courts have held that noncitizens who have been detained under similar circumstances have not been provided with adequate notice.  *See, e.g.*, *Funes*, 2025 WL 3263896, at *18 (finding that Funes was not given a notice of revocation of release "[u]pon revocation" because "she did not receive the notification until many hours after revocation" when she already "had been placed in a cell").  Nor did the Acting Field Office Director indicate the time that he signed the Notice revoking Petitioner's release, which might otherwise provide the Court with insight as to the order of operations with respect to the revocation of Petitioner's OSUP and his detention.  *See* ECF No. 7-4 at 3.

Based on the record before the Court, the timing as to when Petitioner was provided with "notifi[cation] of the reasons for revocation" is thus suspect because the Notice of Revocation of Release "must be supplied '[u]pon revocation.'"  *Funes*, 2025 WL 3263896, at *17 (quoting 8

---

[5] According to the arrest narrative, ICE is "currently executing at-large operations, targeting immigration violators in the Philadelphia Area."  ECF No. 7-1 at 3.  But Respondents do not dispute in their briefing that Petitioner has complied with all conditions of his release since he has been subject to an OSUP, and thus cannot be considered an "immigration violator."  Nor do Respondents dispute that Petitioner has "no criminal history."  *Id.*

C.F.R. § 241.4(*l*)(1)).  Ultimately, the Court need not decide whether late service of the Notice of

Revocation of Release constitutes improper notice because the Court finds that Respondents failed

to provide Petitioner with the required informal interview and an opportunity to be heard.  *See*

*infra* at 13; *see also Zhang v. Bondi*, No. 25-cv-10418, 2026 WL 42778, at *3 (S.D.N.Y. Jan. 7,

2026).[6]

Next, the Court turns to Respondents' compliance with Section 241.4(*l*)'s requirement that

an alien "be afforded an initial informal interview promptly after" being detained in order "to

afford the alien an opportunity to respond to the reasons for revocation stated in the notification."

8 C.F.R. § 241.4(*l*)(1).

---

[6] Furthermore, it is unclear whether Petitioner's OSUP was improperly revoked by an individual
who did not have authority to do so.  *See* 8 C.F.R. § 241.4(*l*)(2) (only allowing revocation by the
"Executive Associate Commissioner" or a "district director" under specified conditions).  Here,
the Court need not decide whether an "Acting Field Office Director" has the authority to revoke a
noncitizen's OSUP.

Assuming *arguendo* that an "Acting Field Office Director" qualifies as a "district director," 8
C.F.R. § 241.4(*l*)(2), it appears that the Acting Field Office Director did not make a factual finding
that revocation was "in the public interest" and that the "circumstances do not reasonably permit
referral of the case to the Executive Associate Commissioner," as required by the regulation.  *Id.*;
*see also* ECF No. 1 ¶¶ 31, 57–58.  Below Mr. Rose's signature, the Notice of Revocation of Release
contains a "[n]ote" that "8 C.F.R. § 241.4 revocation must be EAD or FOD where there is a public
interest to do so and referral to EAD not reasonable; 241.13 may be by RMD."  ECF No. 7-4 at 3.
But there is no indication on the Notice itself that Mr. Rose engaged in the required fact finding
and determined that (1) it was "in the public interest" to revoke Petitioner's release, and (2)
Petitioner's case could not reasonably be referred to the Executive Associate Commissioner for
the revocation decision.

At this time, the Court is not making a determination as to whether this, too, constituted an
independent procedural violation of the agency's regulations.  The Court comments only that this
additional procedural irregularity is particularly troubling here because Petitioner has no criminal
record and has complied with all conditions of his OSUP for over a decade.  *See* ECF No. 1 ¶ 2;
ECF No. 8 at 5; ECF No. 7-1 at 4.  Respondents provided no evidence that either the "public" or
Congress have an interest in removing non-criminal noncitizens who have been residing in the
United States for decades in full compliance with their OSUP, or as to why it is all of a sudden in
the "public interest" to effectuate Petitioner's removal, when the Government has failed to act on
his final order of removal for over twenty years.

Respondents argue that ICE's "discretionary revocation of an alien's release for purposes of enforcing a removal order does not expressly require that the alien be afforded an interview or opportunity to respond to the agency's revocation." ECF No. 7 at 13. This argument has been universally rejected. Indeed, Respondents' "position conflicts with the overwhelming weight of persuasive authority" that has addressed this issue. *Zhang v. Genalo*, No. 25-cv-6781, --- F. Supp. 3d ----, 2025 WL 3733542, at *10 (E.D.N.Y. Dec. 28, 2025). Numerous district courts have held that "the procedural requirements outlined in (*l*)(1) equally apply to revocation under (*l*)(2)." *Id.* (collecting cases); *see also Funes*, 2025 WL 3263896, at *16 ("The Court is not alone in holding that the text of § 241.4(*l*) sets forth a unified set of procedures governing the revocation of release." (collecting cases)); *Dudamel*, 2026 WL 498612, at *4 n.6.[7] This Court joins in those holdings; Petitioner was entitled to "an informal interview promptly after" his detention. 8 C.F.R. § 241.4(*l*)(1).

As a result of Respondents' position that they did not need to provide Petitioner with an interview, ergo, the record does not support a finding that Petitioner received the "informal interview" that he was entitled to or a meaningful opportunity to be heard. This is a fatal flaw in the due process record. The Notice of Revocation of Release states that "[o]n February 5, 2026, you will be afforded an informal interview at which you will be given an opportunity to respond to the reasons for this revocation. You may submit any evidence or information you wish to be

---

[7] Furthermore, Respondents' position is also contrary to the text of the Notice of Revocation of Release, which states that Petitioner "will be afforded an informal interview." ECF No. 7-4 at 2. Other courts have pointed out that "ICE has been using this language in its form notices of revocation for at least the past eight years." *Zhang*, 2025 WL 3733542, at *10 (citing *Funes*, 2025 WL 3263896, at *16). Therefore, "[t]he history of the regulation as implemented by ICE belies [Respondents'] recent litigation position—apparently adopted in opposing habeas challenges to revocations in which ICE was claimed to have failed to provide the procedural safeguards of § 241.4(*l*)—that these protections apply only where the revocation is based on violating a condition of release." *Funes*, 2025 WL 3263896, at *17.

reviewed in support of your release." ECF No. 7-4 at 2. There is no indication that this informal

interview occurred, nor do Respondents affirmatively represent in their brief that the interview

took place, which is telling. *See* ECF No. 7 at 14 (reiterating only what the Notice of Revocation

of Release states); *see also* ECF No. 1 ¶ 22 ("Upon information and belief, at no time following

Petitioner's arrest did ICE explain why it revoked Petitioner's order of supervision or give him an

opportunity to respond to those reasons."); ECF No. 8 at 4. To the contrary, the evidence suggests

that Petitioner was not given a meaningful opportunity to contest the reasons for revocation and

submit evidence on his behalf. Moreover, the Court is not naïve enough to think that this interview

would have changed anything at the time, given the lock step, one-size-fits-all approach then in

play. The Court anticipates that the approach will change as part of a mid-administration course

correction.

Indeed, on the very same day that Petitioner was arrested—February 4—Respondents also

provided Petitioner with a "Notice of Imminent Removal Pursuant to 8 C.F.R. § 241.4(g)(4),"

which states that ICE "*will not conduct a custody review at this time*" and "is in possession of a

travel document to affect your removal and expects this to occur in the near future." ECF No. 7-

5 at 2 (emphasis added and omitted). Section 241.4(*l*)(3) provides that "[i]f the alien *is not released

from custody following the informal interview provided for in paragraph (l)(1)* of this section,"

another immigration officer will schedule a custody review within about "three months after

release is revoked," during which there is "a final evaluation of any contested facts relevant to the

revocation and a determination whether the facts as determined warrant revocation and further

denial of release." 8 C.F.R. § 241.4(*l*)(3) (emphasis added). But here, on February 4—the day

before Petitioner's informal interview was purportedly scheduled to take place—ICE had already

issued a "Notice of Imminent Removal Pursuant to 8 C.F.R. § 241.4(g)(4)" declining to schedule

a custody review, which suggests that ICE had no intention of providing Petitioner with the informal interview that he was entitled to.  ECF No. 7-5 at 2.

Furthermore, in other cases, the Government has "submitted an interview form to the court as evidence that an informal interview was conducted."  *Zhang*, 2026 WL 42778, at \*4 (citing *Zhang*, 2025 WL 3733542, at \*14).  For example, in *Zhang v. Genalo*, the Government provided the Court with an "[i]nterview [f]orm" as purported evidence that Respondents had provided Mr. Zhang with an informal interview.  2025 WL 3733542, at \*14.  While the interview form had Mr. Zhang's name on it, that court found that the form failed to "provide a reliable basis to conclude that the interview was actually conducted" because ICE officers had left most of the form blank. *Id.*  Here, Respondents have not even submitted an interview form, let alone a partially completed one; instead, Respondents cite only to the Notice of Revocation of Release, which simply states that Petitioner "will be afforded an informal interview" on February 5, 2026.  ECF No. 7-4 at 2; ECF No. 7 at 14.  Just as in *Zhang v. Bondi*, here, the "absence of any interview form does not provide a reliable basis on which to conclude that [Petitioner's] interview was actually conducted" on February 5, 2026.  2026 WL 42778, at \*4.

Accordingly, even if the Notice of Revocation of Release that was given to Petitioner satisfied the notice requirement imposed by Section 241.4(*l*)(1), the Court concludes that Petitioner was not provided with "an informal interview promptly after" his detention—at which time he would have had "an opportunity to respond to the reasons for revocation stated in the notification"—as required by the relevant regulation.  8 C.F.R. § 241.4(*l*)(1); *see also Zhang*, 2026 WL 42778, at \*3 ("[B]ased on a review of the Notice and the lack of evidence sufficiently establishing that Respondents gave [petitioner] the required informal interview, the Court concludes that the Notice failed to meet the procedural requirements of § 241.4(*l*).").

## 2. *Procedural Due Process Violation*

Having found that Respondents failed to comply with the requirements contained in 8 C.F.R. § 241.4(*l*), the Court next considers whether Petitioner's procedural due process rights were violated and, if so, the appropriate remedy.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases). Noncitizens who are subject to orders of final removal maintain procedural due process protections. *Id.* at 693–94 (citing *Wong Wong v. United States*, 163 U.S. 228, 238 (1896)); *see also Funes*, 2025 WL 3263896, at *21 (explaining that other courts "have recognized that even when a noncitizen's re-detention is statutorily committed to ICE's discretion, the Due Process Clause gives the noncitizen procedural rights in connection with the decision to deprive them of liberty" (collecting cases)).

Petitioner argues that Respondents violated his procedural due process rights when they failed to follow the proper procedures for revoking his OSUP, detained him, and failed to provide him with an opportunity to be heard. ECF No. 1 ¶¶ 1, 5, 49–51. The Court agrees. "[T]he mere fact that the government has the authority to detain someone does not mean that it may do so in any manner it chooses, without affording due process." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. May 2, 2025) (citation omitted). This is especially true here, where the Government has waited over twenty years to make any attempt to effectuate Petitioner's final order of removal. *See* ECF No. 8 at 4. Furthermore, when "the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235

14

(1974); *see also Montilla v. I.N.S.*, 926 F.2d 162, 164 (2d Cir. 1991) ("The notion of fair play

animating [the Fifth] [A]mendment precludes an agency from promulgating a regulation affecting

individual liberty or interest, which the rule-maker may then with impunity ignore or disregard as

it sees fit."); *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. Nov. 8, 2017) ("[W]here an

immigration 'regulation is promulgated to protect a fundamental right derived from the

Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it,

the challenged [action] is invalid'" (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993))).

Just as in *Funes*, this case "supplies an excellent illustration of the important purposes

served by the procedural protections—notice and an opportunity to be heard—that [Petitioner] was

denied." 2025 WL 3263896, at *23. As Petitioner's counsel has explained, Petitioner has several

arguments available as to why ICE should exercise its discretion to refrain from removing him

from the United States to Honduras. Petitioner has "an approved immigrant petition filed on his

behalf by" his mother, who is a United States citizen, and which has a priority date. ECF No. 8

at 5; *see also* ECF No. 1 ¶ 18; *id.* at 24 (Ex. C). In addition, Petitioner's asylum application is still

pending. ECF No. 8 at 5; *see also* ECF No. 1 ¶ 19; *id.* at 26–27 (Ex. D). Furthermore, Petitioner

"has no criminal record," "has extensive family ties in the area, including his mother who is a US

citizen," and "has complied with all of the requirements set out by the government, faithfully

attending his ICE check ins" for well over a decade. ECF No. 8 at 5; *see also* ECF No. 1 ¶ 2.

"[A]s a practical matter," Petitioner's arrest and detention "disabled [him] from meaningfully

presenting these arguments" in response to the revocation of his release. *Funes*, 2025 WL

3263896, at *23.

Therefore, the Court holds that Respondents' failure to abide by the procedural

requirements of 8 C.F.R. § 241.4(*l*), which governed Petitioner's detention, and failure to provide

15

him with an opportunity to contest the reasons for the revocation of his release constituted violations of Petitioner's due process rights. *See, e.g.*, *Funes*, 2025 WL 3263896, at \*23 (explaining that § 241.4(*l*) "was designed to give noncitizens the minimal elements of due process—notice and an opportunity to be heard—and to do so close in time to the infringement of their liberty interest"); *Zhu*, 798 F. Supp. 3d at 414 ("ICE's failure to follow its own regulations and provide [p]etitioner with notice or an interview violated [p]etitioner's procedural due process rights."); *Dudamel*, 2026 WL 498612, at \*8 ("[T]he Government's failure to follow its own procedural requirements governing Petitioner's re-detention violated the Due Process Clause.").

### 3. Remedy

Petitioner argues that the appropriate remedy for Respondents' violation of his due process rights is "immediate release." ECF No. 1 at 16. The Court agrees.

As explained above, Respondents violated Petitioner's procedural due process rights by failing to abide by their own regulations and by detaining him without giving him an opportunity to be heard. Accordingly, Petitioner is being held "in custody in violation of the Constitution." 28 U.S.C. § 2241(c)(3); *see also Funes*, 2025 WL 3263896, at \*25. A federal court adjudicating a petition for a writ of habeas corpus is authorized to "dispose of the matter as law and justice require," *see* 28 U.S.C. § 2243, and has "equitable discretion to decide whether to issue the writ or to provide a remedy." *Edwards v. Vannoy*, 593 U.S. 255, 289 (2021) (Gorsuch, J., concurring).

Today, this Court joins many others "who have ordered a petitioner's immediate release from detention after finding that [Respondents] violated procedures under § 241.4(*l*) in revoking the petitioner's OSUP, either by failing to provide a legally sufficient notice of revocation, an informal interview, or both." *Zhang*, 2025 WL 3733542, at \*16 (collecting cases); *see also Funes*, 2025 WL 3263896, at \*25 (ordering release after finding a procedural due process violation); *Zhu*,

798 F. Supp. 3d at 415; *Dudamel*, 2026 WL 498612, at \*9; *Zhang*, 2026 WL 42778, at \*5; *Roman-Cruz v. Lyons*, No. 25-cv-10522, 2026 WL 114936, at \*3 (S.D.N.Y. Jan. 15, 2026). Indeed, this "remedy aligns with numerous cases releasing habeas petitioners held in custody following procedural due process violations." *Funes*, 2025 WL 3263896, at \*25 (collecting cases); *see also Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) ("The traditional function of the writ of *habeas corpus* is to secure release from unlawful executive detention." (citing *Munaf*, 553 U.S. at 693)).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the Petition (ECF No. 1), and order Respondents to immediately release Petitioner from detention and to certify their compliance with the Court's Order. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

CHAD F. KENNEY, JUDGE